Filed 7/7/14  Estate of Katz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of DAVID KATZ, Deceased. | |
| GARY JOSHUA KATZ, as Executor, etc., | |
| Petitioner and Appellant, | G049807 |
| v. | (Super. Ct. No. PSP1100018) |
| EL PASEO COLLECTION ELEGANTE, | O P I N I O N |
| Claimant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, James A. Cox, Judge.  Affirmed.

Nethery and Ofseyer, D. Martin Nethery and Jeremy J. Ofseyer for Petitioner and Appellant.

Hart, King & Coldren, Robert S. Coldren and Boyd L. Hill for Claimant and Respondent.

* * *

Petitioner and appellant Gary Joshua Katz, as executor of the Estate of David Katz, appeals from an order denying his petition for attorney fees after a special proceeding in the probate court. Petitioner filed an action seeking to substitute funds in a blocked account in place of a lease guaranty given by decedent to claimant and respondent El Paseo Collection Elegante, which was leasing space to decedent's corporation.

Petitioner made a Code of Civil Procedure section 998 (section 998) offer. Respondent did not accept the offer and the case proceeded to trial. The trial court denied petitioner's subsequent motion for costs and attorney fees on several grounds, including finding it could not determine whether the section 998 offer was better than the judgment because certain conditions in the offer were too uncertain for the court to value.

Petitioner contends it was error to find the section 998 offer was uncertain because its terms were clear and superior to those contained in the judgment. He also maintains the court erred in ruling this was not an action on a contract so petitioner was not entitled to attorney fees under Civil Code section 1717 (section 1717), and in concluding Probate Code section 1002 bars an award of attorney fees under both section 998 and section 1717.

After de novo review we determine the conditional terms of the offer are too uncertain to be valued and affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

David Katz (decedent) and his wife, Constance Katz, were shareholders of DCK Corporation, Inc. In 1998 DCK entered into a lease (Lease) for premises owned by respondent. Decedent and Constance each executed a written Guaranty of the Lease (Guaranty). Pursuant to two addenda, the term of the Lease was extended to July 2016. And each Guaranty was reaffirmed at the time of the extensions.

Decedent died in December 2010 with Constance following within a month. Decedent's estate owned 100 percent of DCK's estate. After petitioner contacted

2

respondent seeking to reduce the rent under the Lease, respondent filed its creditor's claim against decedent's estate. It asserted a "continuing contingent interest" in decedent's Guaranty for the amount due over the balance of the leasehold term.

Petitioner filed an amended Petition to Provide for Contingent Creditor Claim of respondent which alleged the rent payments due respondent were current and the business occupying the premises was viable, making respondent's claim "totally contingent." Petitioner sought an order that funds equal to up to one year's worth of rent plus common area charges be deposited in an interest-bearing blocked account to provide security for the claim. Petitioner also sought to have the court exercise its discretion to meet "'appropriate . . . requirements for security for commercial leases in today's economy'" (boldface omitted), equal to $500,000.

The petitioner requested an order that accrued interest be paid annually to the certain of the estate's beneficiaries and beginning October 2015, 25 percent of the deposit be paid to those same beneficiaries on a quarterly basis. Additionally, if respondent claimed there was a default under the Lease, it could file a motion to have the amount due released from the deposit. No withdrawals would otherwise be authorized.

Respondent countered that, under the Probate Code, the estate was required to deposit the total amount that would be payable if the contingent claim was immediately due. Respondent prayed for a "declining cash deposit of the entire amount potentially due under the Lease" or some other adequate security for the remaining term.

Thereafter petitioner served the section 998 offer "to provide adequately for, and fully satisfy, the contingent creditor claim" of respondent "if any debt becomes, absolute, established, or due" on the following terms: 1) petitioner would deposit $780,000 in an interest-bearing blocked account with a court order required for any withdrawal; 2) except interest would be paid annually to residuary beneficiaries of the estate and any remaining principal and interest would be paid to them upon expiration of the Lease; 3) if respondent claimed there had been a default under the Lease it could file

3

a motion to release funds to pay any amounts due; and 4) petitioner or a residuary beneficiary could seek to modify the judgment if respondent obtained other security, DCK was sold or respondent blocked the sale, or it was "appropriate" to reduce the security.

Respondent did not accept the offer and it expired of its own terms 30 days later. In its trial brief respondent sought an order petitioner deposit just over $1.2 million.

After a multi-day trial the court entered an order requiring the Estate to deposit $559,000 into an interest-bearing account. Withdrawal was authorized only by court order, except that if there had been no default in payment of rent, $100,000 could be withdrawn by petitioner at nine months, six months, and three months prior to the end of the Lease term upon court order. The balance of the deposit could then be released to petitioner as ordered in the final decree of distribution. Petitioner then filed a motion to be adjudicated the prevailing party and to be awarded attorney fees as an item of costs, or, in the alternative, to be awarded postoffer costs including attorney fees under section 998. His postoffer attorney fees equaled just over $100,000.

The court denied the motion on the following grounds: 1) the applicable code section to determine costs for litigating the petition is Probate Code section 1002, and an award of costs under that section was not in the interests of justice; 2) neither party "clear[ly] prevail[ed]"; 3) the petition was not an action "'on a contract'" under section 1717; and 4) certain terms of the section 998 offer were "uncertain and not sufficiently capable of valuation" and thus the court was unable to determine whether the offered amount exceeded the value of the judgment. The section 998 offer, although offering a deposit of more than the court ordered "also included a unilateral right to the executor and [certain] beneficiaries to later seek modification of the judgment. It also sought rights for early withdrawal of earnings on the deposit."

4

## DISCUSSION

Under section 998 a defendant may present to the plaintiff a written offer to settle a case. If the plaintiff does not accept the offer and does not obtain a more favorable judgment at trial, the plaintiff must pay the defendant's postoffer costs. (§ 998, subd. (c)(1).) To be considered more favorable, the value of plaintiff's judgment must exceed the value of the offer. (*Id*., subd. (c)(2)(A).)

"An offer to compromise under . . . section 998 must be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer. [Citations.] Any nonmonetary terms or conditions must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer. [Citations.] Ascertaining the terms of an offer, including the determination whether the offer is sufficiently specific and certain for purposes of section 998, is a question involving the interpretation of a writing. We independently interpret a writing if the interpretation does not turn on the credibility of extrinsic evidence. [Citations.]" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764-765.)

The party making the section 998 offer has the burden to show it is valid. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799.) "[A] section 998 offer must be strictly construed in favor of the party sought to be subjected to its operation. [Citation.]" (*Ibid*.)

The trial court ruled the nonmonetary terms of petitioner's offer "uncertain and not sufficiently capable of valuation." For that reason it could not determine whether the value of offered amount exceeded the value of the judgment. Petitioner contends this

5

was error, arguing the section 998 offer was certain and more favorable than what respondent recovered.[1]  We are not persuaded.

Petitioner first emphasizes that his offer of $780,000 is worth more than the $559,000 awarded.  But that is not the issue.  If the amount of the deposit were the only component of the offer there would be no difficulty determining the comparative values.  The real issue concerns the other elements of the offer.  "[Section 998] does not . . . authorize cost-shifting every time the monetary value of the damage award is less than the monetary 'term' of the defendant's statutory offer."  (*Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 697, italics omitted.)

We must evaluate all the conditions of the section 998 offer.  Some of those conditions cannot be valued.  For example, the offer included a condition that the executor or a residuary beneficiary could move to modify the judgment under three conditions, including if DCK was sold or those parties contended respondent had unreasonably withheld its consent to the sale of DCK.

But what exactly is the extent of this condition?  Does it mean the executor could seek payment for alleged damages for respondent's refusal to agree to a sale?  How much would that amount to?  It is reasonable to conclude it could equal a substantial portion of the amount deposited.  The language of the condition does not bar the court from ordering such a withdrawal.  Given the language of the condition, we are not persuaded that, in making such an order, the court would find respondent "already got all security it in fact needed," as petitioner argues.

Another condition would have allowed a motion to modify the judgment to withdraw funds if "the circumstances . . . are such that a reduction in the amount . . . is

---

[1] Respondent argues that regardless of whether the offer was more favorable, there are other legal reasons why petitioner has no right to recover attorney fees.  By deciding petitioner's offer was not more favorable than respondent's recovery after trial, we are not deciding whether petitioner would otherwise have the right to attorney fees.

6

appropriate." There is no definition of "appropriate" and we would have to speculate about the meaning and extent of it as well speculating about how much money those appropriate circumstances would justify withdrawing.

We are not persuaded by any of petitioner's arguments the terms are certain. For example he claims the offer is enforceable because modification based on alleged changed circumstances falls within general equitable principles. But the issue is valuation, not enforcement. And even if equity allows modification, petitioner cites no equitable principle outlining how to value this condition.

Petitioner seems to contend that these potential modifications would be possible regardless of whether they were included in the offer, so the offer is just as certain as the judgment. But it is questionable whether, based purely on equitable principles, the court would be empowered to reduce the deposit if respondent unreasonably withheld its consent to the sale of DCK. There is no connection between that event and the adequacy of security for performance under the Lease.

Petitioner also contends the provisions allowing withdrawal are "superior" to those in the judgment, which allow for $100,000 to be paid out nine, six, and three months before expiration of the lease term. We do not agree. The withdrawal of funds under the conditions described above relating to the sale of DCK or when circumstances were appropriate have no monetary amount or date attached. It would be next to impossible to calculate at any given time, from the date of deposit until the lease termination, what the value of the deposit would be. It could be less than what the court originally ordered.

Moreover, the fact the offer and the judgment both permit "early draws" also does not assist in valuation of the offer. The early draws allowed in the judgment are specific in amount and time, contrary to the undefined withdrawals in the offer.

"[A] defendant's settlement offer may include terms or conditions, apart from the termination of the pending action in exchange for monetary consideration, that

7

make it exceedingly difficult or impossible to determine the value of the offer to the plaintiff.  In those circumstances, a court should not undertake extraordinary efforts to attempt to determine whether the judgment is more favorable to the plaintiff.  Instead, the court should conclude that the offer is not sufficiently specific or certain to determine its value and deny cost shifting under . . . section 998.  [Citations.]" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles*, *supra*, 152 Cal.App.4th at p. 766.)

Notably, petitioner does not suggest any value for the other terms and conditions.  It is not unreasonable to infer he cannot make a monetary determination himself.  We are not persuaded the section 998 offer was more valuable than what respondent recovered at trial.  Thus, petitioner is not entitled to recover attorney fees under section 998.

Because we decide the case on this basis there is no need for us to discuss any of the other issues raised.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

8